ROMINES *v.* BRUMFIELD.

4-5783 136 S. W. 2d 1026

Opinion delivered February 19, 1940.

*Minor Pipkin* and *Howard Hasting,* for appellant.

*M. M. Martin* and *J. F. Quillin,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a decree finding that Romines owes Brumfield $200.

A written agreement of March 9, 1938, provided that the two should share equally in all live stock then in possession of the contracting parties. As to berry crops, the division did not apply to 1938, but was effective on a fifty-fifty basis thereafter. There was the further agreement that all products of the farm should be shared equally. It was expressly stipulated in the contract that Romines and his wife, and Brumfield and his wife, were to ". . . care for all live stock and farm all products and berry crops," and that the contract should continue until further arrangements were made.

Operations under the contract were conducted on the farm owned by Romines, and the two families lived in the same house. Appellee testified that although there was no written evidence of their agreement until March 9, the first business dealings were a month earlier. Work of building a house for appellee and his wife had been started.

Appellee claims to have suffered a sunstroke June 5. He was in Veteran's Hospital in North Little Rock until July 13, 1938. Appellant charged that appellee had been drinking and neglecting his work. Appellee denied the charge and said that he had not had a drink of liquor for thirty days prior to June 5.

Appellant talked with appellee the day the latter became ill. Appellee said he could not hold up ". . . under the oppression and bossing and the work I have to do." Appellant testified that appellee told him "Whatever agreement you make with my wife is all right with me."

While appellee was in the hospital appellant settled with Mrs. Brumfield, who wrote: "Received from J. B. Romines $30.25 for my interest in the farm. Paid in full. Mrs. W. E. Brumfield."

Appellant insists he understood from appellee that Mrs. Brumfield was authorized to make settlement; that the $30.25 payment was intended as a settlement of appellee's interest as well as the interest of Mrs. Brumfield. He regarded the transaction as closed.

It was appellee's contention that the payment was without reference to his interests; that if appellant chose to pay Mrs. Brumfield for services she had rendered on the farm that was his own affair. Mrs. Brumfield was not appellee's agent and was without authority to represent him.

Mrs. Brumfield testified that she acted in her own behalf. In support of this contention she pointed to the fact that she signed the receipt personally.

Appellant testified: "I couldn't say whether Mr. Brumfield told his wife to settle with me. She said something about Bill settling with me at the time I paid her the $30.25, but I don't know just what it was she said about it. . . . We talked the settlement over and agreed upon what the receipt shows. I understood it was to cover the full interest of Brumfield and his wife. Mrs. Brumfield indicated that she understood she was settling for both herself and her husband. She said she was settling in full. She made some statement about Bill seeing me, but I don't know just what she meant by it."

Appellant further testified that when Brumfield returned from the hospital ". . . he brought a bunch of hands to work out the strawberries and I wouldn't let him do it. I promised to pay them $42 for the house they started on the place, but nothing more was said about it. They did not accept my offer."

J. W. Barnhill, who was working for appellant, testified he overheard a conversation between Romines and Brumfield just before the latter went to the hospital. In talking about a settlement Brumfield said: "I am going to leave it up to [my wife] and whatever you two do—any way she settles—will be all right with me."

There was other testimony, including statements alleged to have been made by Mrs. Brumfield confirming the settlement.

The chancellor found that appellee had been damaged $200 and gave judgment therefor. The findings are based upon evidence as to investments made by each, the value of livestock, farm produce, etc.

Counsel for appellant say: "The fact [that appellee appointed his wife as his agent] having been established by a clear preponderance of the evidence, appellee is estopped to deny that his wife was his agent for the purpose of making settlement under the contract, and it becomes at once immaterial whether or not. he did in fact so appoint her. Appellant had no way whatever of knowing whether or not appellee had in fact appointed his wife his agent. He had a right to rely upon the representations of appellee that he had done so."

No question of estoppel is involved. The question is, Did appellee actually designate his wife as his agent? The attempt is made to prove by Barnhill that there was an express appointment, Brumfield having told Romines that whatever his (Brumfield's) wife did would be satisfactory. The issue is one of fact. It is true that more witnesses testified for appellant than for appellee, but "the weight of evidence is not a question of mathematics, but depends upon its effect in inducing belief. One witness may be contradicted by several and yet his testimony may outweigh all of theirs. The question is not on which side are the witnesses more numerous, but what is to be believed." [See Ballentine's Law Dictionary, citing 10 R. C. L. 1013, and other authorities].

The record does not justify a finding here that the decree is contrary to a preponderance of the evidence. Affirmed.