ARKANSAS POWER & LIGHT COMPANY *v.*
DR. JOHN W. HARPER ET UX

5-5341                                              460 S. W. 2d 75

Opinion delivered December 7, 1970

*Shackelford & Shackelford; House, Holmes & Jewell* and *Robert L. Robertson, Jr.,* for appellant.

*Brown, Compton, Prewett & Dixon,* for appellees.

J. Fred Jones, Justice. This is an eminent domain case wherein the Arkansas Power & Light Company took an easement in a strip of land 180 feet wide and one and one-fourth mile long, consisting of 27.65 acres across a 636 acre tract of land belonging to Dr. John W. Harper and his wife near El Dorado in Union County. The land was purchased in smaller tracts by Dr. Harper for investment purposes but was being utilized by him for timber and grazing land at the time of the taking. The power company took the easement for high voltage transmission lines to be elevated on steel towers, six · of which were within the easement taken. A jury trial resulted in a verdict and judgment thereon for $25,000 damages in favor of the Harpers. The power company has appealed and relies on the following points for reversal:

"The trial court erred in admitting appellees' evidence of a right-of-way purchase by appellant as a comparable sale.

The trial court erred in admitting appellees' evidence of unpleaded special damages to the remainder.

The verdict included severance damages and was excessive since there was no substantial evidence of severance damages."

Dr. Harper testified that his land is one-fourth mile from the city limits of El Dorado and approximately two miles from the court house square. He testified that the highest and best use for his land is for industrial development on a part of it and for residential development on part. He testified that a blacktop road runs along the north side of his property; that an industrial area joins his land on the west, and that new residential development is to the east of his property. He testified that the fair market value of his land before the taking was $550,000 and that after the taking, with the transmission line in place, the fair market value of his land would be $460,000, and that because of the taking his land had been damaged $90,000.

On cross-examination, Dr. Harper testified that his home and a manager's home are on the land and that the improvements contribute about $150,000 to the value, leaving the land alone with a market value of at least $400,000. The portion of the testimony to which the power company directs its assignment of error under its first point, was brought out on cross-examination of Dr. Harper, and the record pertaining thereto is as follows:

"Q. Do you know of any property that's been sold that's comparable to the price that you're talking about?

A. Yes, sir, Utah Daniels was paid—right down at the bottom, joining my property there—

Q. All right, where is that?

A. Right down there.

Q. Where is that? Down here?

A. Yeah, right where your line comes across.

Q. Where the line comes across?

A. He was paid $1,700.00 for 1.475 acres of land on July 8, 1969.

Q. All right, have you been down there to inspect that property?

A. Yes, sir.

Q. Do you know that's on the 1.475 acres of land?

A. Yes, sir.

Q. What?

A. Your high line.

Q. Well,—

A. I think it's where your high line comes across there.

Q. This was purchased by whom to whom?

A. Purchased by Arkansas Power & Light.

Q. Your honor, we ask, and I'm sure Mr. Prewett will agree with this, to exclude the testimony simply on the grounds that it's not admissible sale. It's between a condemnor and a condemnee.

William I. Prewett: It's a sale by a warranty deed, so it's a purchase just like any other purchase and sale. There's no evidence here that this is a sale by a condemnor and a condemnee. It's a warranty deed of record for it. We don't feel that it is objectionable."

Dr. Harper testified that his opinion as to the $90,000 damage to his land is based on his opinion that the actual right-of-way was worth at least $500 per acre and the remainder of the damage would be because no one would want a home or an industrial plant under a 500,000 volt transmission line. He testified that he had put his tract together by the purchase of small tracts from time to time, and that he owned considerable other land in Union County. Dr. Harper was the owner of the land involved and could testify as to its value without qualifying as an expert. (*Ark. State Highway Commn. v. Russell*, 240 Ark. 21, 398 S. W. 2d 210).

The company relies on *Yonts v. Public Service Co. of Ark.*, 179 Ark. 695, 17 S. W. 2d 886, for the proposition that evidence of what the condemnor paid for other lands is inadmissible in establishing the market value of the lands taken. While we agree with the principle stated by appellant, we cannot say that this decision is applicable here. In the case at bar Dr. Harper had testi-

fied on direct examination as to the value of the property he owned. He based his value primarily on its potential demand for industrial and residential development and his own experience in buying and selling land. He did not testify, either on direct or cross-examination, that he valued his land on the basis of what other comparable land was selling for in the vicinity. He never did testify that he based his evaluation to the sale from Daniels to the company or on any other sales in the community. The purpose of the cross-examination could only have been to test Dr. Harper's basis for the valuation he placed on his property. Dr. Harper was simply asked on cross-examination "do you know of any property that's been sold that's comparable to the price that you're talking about?" He answered in the affirmative and it was finally brought out, still on cross-examination, that the sale he knew about was from Utah Daniels to the Arkansas Power & Light Company.

The company moved that the testimony be stricken because it concerned a sale between a condemnor and condemnee. Dr. Harper contended that the sale was by deed and that there was no evidence that it was anything other than a regular open market sale. We are unable to say definitely from the record before us where the Daniels land lay or why it was sold. The record does not reveal whether the Daniels sale was for right-of-way purposes or not. Dr. Harper says it is where a high line comes across, but it fronts 100 feet on the Nicks Spring Road and is 660 feet deep. It would appear from the record that at least, this sale was not a continuation of the 180 foot easement across Dr. Harper's land. Even if we should be able to say that the Daniels acquisition was for such a purpose as would come within the eminent domain powers of the company, there was still no reversible error.

We have held that the rule that sales to a condeming party are not a fair criterion of value is a prohibition against the introduction of such testimony and not a prohibition against the knowledge a witness may possess. *Ark. State Highway Commn.* v. *Kennedy,* 234 Ark. 89,

350 S. W. 2d 526. Here, as there, the testimony was elicited by cross-examination, not direct examination. The answer revealed that the witness had considered the amount paid for other land taken by the condemnor in arriving at his opinion as to the value of the Kennedy land. There the court gave an admonitory instruction as follows:

> "You are instructed to disregard that portion of the testimony of the witness O. E. Guinn which was based on settlement payments by the State Highway Commission on certain property owners in this vicinity. The Court has instructed you on the proper measure of damages; and insofar as damages are concerned, that is the rule you will follow in the determinations in this case."

Perhaps appellant would have been entitled to a similar instruction had it so requested. Instead of asking the court to advise the jury not to regard that part of the testimony of the witness based upon the Daniels sale, appellant's counsel asked that answers directly responsive to his questions on cross-examination be excluded. The question that elicited the response was "Do you know of any property that has been sold that's comparable to the price that you're talking about?" The answer was honest and responsive and did not state that the opinion of the witness was based upon this knowledge.

While cross-examination is a valuable weapon in the arsenal of the trial lawyer, everyone who has passed the neophyte stage is aware of the hazards involved in firing it, not the least of which is elicitation of an unfavorable response, which may well be devastating to the examiner's cause. For that reason, experience teaches that the weapon should be utilized with caution and restraint. The wide latitude permitted a cross-examiner increases the hazard and indicates the wisdom of restraint.

It is not error to refuse to exclude a responsive

answer on cross-examination at the behest of the cross-examiner. *Public Utilities Corp.* v. *Oliver,* 64 F. 2d 60 (8th Cir. 1933); *Brown* v. *Hebb,* 167 Md. 535, 175 A. 602, 97 A. L. R. 366 (1934); *Souza* v. *Becker,* 302 Mass. 28, 18 N. E. 2d 350, 120 A. L. R. 1002 (1938); *Reed* v. *Prudential Ins. Co.,* 229 No. App. 90, 73 S. W. 2d 1027 (1934); *International Brotherhood, etc.* v. *Rodriguez,* 193 S. W. 2d 835, (Tex. Ct. App. 1945); *Durand* v. *Reeves,* 217 Ga. 492, 123 S. E. 2d 552 (1962); *Times-Guthrian Pub. Co.* v. *Guthrie County Vedette,* 256 Iowa 302, 125 N. W. 2d 829 (1964); *Arp* v. *Wolfe,* 49 Tenn. App. 294, 354 S. W. 2d 799 (1956), cert. denied June 7, 1957. It has been held error to grant such a motion to exclude. *Meske* v. *Wenzel,* 247 Wis. 598, 20 N. W. 2d 654 (1945).

We have placed ourselves in the same posture as the Wisconsin court on this question in *Halperin* v. *Hot Springs Street Ry. Co.,* 227 Ark. 910, 302 S. W. 2d 535, when we said:

> "Several questions concerning the admissibility of evidence are discussed in the briefs. By stipulation, appellant took the deposition of Modine Grisham with appellee's attorney present. On cross-examination, appellee's attorney asked several questions which (in most instances) called for answers based on conclusions or hearsay. In some instances the trial court refused to admit the answers. We think this was error. The rule is, as stated in Professor Conrad's work on Modern Trial Evidence, Vol. 2 at page 371, 'A party litigant cannot object to evidence which he himself has solicited.' Appellee recognizes this rule but thinks it does not apply to discovery depositions. It is unnecessary for us to decide whether the rule does or does not so apply because a discovery deposition is not involved here. We feel that the above comments will prevent any further disagreements over the admissibility of similar testimony."

One is not permitted to speculate by participating in the development of evidence and then demanding that

it be stricken when it proves unfavorable. *Lewis* v. *Shiffers,* 67 A. 2d 269 (Mun. Ct. App. D. C. 1949). See also *Poinsett Lumber & Mfg. Co.* v. *Traxler,* 118 Ark. 128, 175 S. W. 522; *Montgomery* v. *First Nat'l Bank of Newport,* 246 Ark. 502, 439 S. W. 2d 299.

We have applied the pertinent principle in *Ark. State Highway Commn.* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201. Even though the motion there was to strike all the testimony of the value witness, the reason for holding its denial not erroneous is as applicable here as there. We said:

> "It is true, as the appellant contends, that if cross-examination demonstrates that the witness has no reasonable basis whatever for his opinion, then his testimony should be stricken. *Ark. State Highway Commn.* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436 (1963). Furthermore, if cross-examination shows that the witness has a weak or questionable basis for his opinion, that fact has a bearing upon the weight to be given the witness's testimony. The cross-examining attorney, however, is not entitled to embark upon a fishing expedition with immunity from any unfavorable information he may elicit. He acts at his peril in putting a question that may evoke an answer damaging to his own case."

It has been held in an eminent domain case that the refusal of a cross-examiner's motion to strike testimony elicited of a value witness on cross-examination was not error, where the jury was instructed, as it was here, as to the proper measure of damages. *North Carolina Highway, etc.* v. *Privett,* 246 N. C. 501, 99 S. E. 2d 61 (1957).

As to appellant's second point, there was some testimony from Dr. Harper that some of the timber removed from the right-of-way was wind rowed along the outside edges of the easement right-of-way, and that some of the trees extended beyond the right-of-way. The appellant's witnesses also testified as to the timber

growing on and cut from the right-of-way, but they denied that any of it was pushed outside of the right-of-way. We conclude that any error in the admission of evidence as to this timber was cured in the court's instruction Nos. 7A, 8 and 9, and the refusal of defendant's requested instruction No. 3. These instructions are as follows:

> "7A. You are instructed that the just compensation to which the landowners are entitled in this proceeding is the fair market value of the lands within the right of way plus the difference, if any, in the fair market value of the remainder of the lands immediately before the taking and immediately after the taking.
>
> Now the date for your determination of such compensation is June 16, 1969.
>
> 8. Now the term 'fair market value,' as used in these instructions, means the price the land would bring on the market in a transaction between a buyer and seller with knowledge of all the uses and purposes to which the land is adapted after they have had a reasonable time for negotiations, and the seller being willing but not forced to sell, and the buyer being willing, but not forced to buy.
>
> 9. You are instructed that the fact that the landowner is unwilling to sell his land or that he may wish to utilize the land in question in some particular manner has no effect upon the fair market value of the land. The fair market value is involved in the measure of just compensation and not its value to the owner or to the party who is condemning it."

Defendant's requested instruction No. 3 (refused):

> "You may take into consideration the restoration costs, clean up expenses, and the cost of replacing fences, along with all of the evidence in determining just compensation for the defendants."

Mr. R. E. Hosford testified as an expert for Dr. Harper. He placed a before value of $436,000 on all the property and the after value of the entire tract at $404,000, leaving a difference of $32,000 as damages. He estimated the before taking value at a maximum of $375 per acre. On cross-examination he testified to a comparable sale of 38 point something acres from Swilley to Anthony for $13,000; a sale of a 2.58 tract joining Dr. Harper's property, from Molnaird to Cartwright for $3,500; a 120 acre sale from Gaddy to McCoy for $40,-000; a one acre sale from Molnaird to Goodwin for $1,800. Mr. Hosford testified that that property was being developed for residential purposes adjacent to Dr. Harper's property, and that this property was selling from $800 to $1,500 per acre.

We do not agree with the appellant's argument that there was no substantial evidence of severance damages. Dr. Harper testified that aside from the market value of the land actually taken, the high voltage transmission line running through the middle of five 40 acre tracts of his land would decrease the value of the land outside the right-of-way for residential and industrial development.

The judgment is affirmed.

CARLETON HARRIS, C. J. and BROWN, J., would reverse for the court's refusal to exclude appellant's testimony relative to the Daniels' sale.