ARKANSAS STATE HIGHWAY COMMISSION *v.*
LEON FLAKE ET AL

5-6231                                       495 S.W. 2d 855

Opinion delivered June 4, 1973
[Rehearing denied July 9, 1973.]

*Thomas B. Keys* and *James N. Dowell,* for appellant.

*Thomas J. Bonner,* for appellees.

GEORGE ROSE SMITH, Justice. The appellees own two parcels of land, used as a parking lot, at the intersection of Scott Street and Bridge Street (actually an alley) in Little Rock. In 1971 the Highway Commission, in the process of replacing the Main Street bridge across the Arkansas River, began the construction of a ramp within the Scott Street right of way. The raised ramp was designed to (and now does) occupy Scott Street for about two thirds of the appellees' frontage along that street.

The landowners, contending that the value of their land would be diminished by their partial loss of direct access to Scott Street, brought this suit to recover compensation for the damage to their property. This appeal is from a decree awarding the plaintiffs $15,000 in damages. The Highway Commission argues several points for reversal, but we need consider only the contention that the suit is actually against the State and is therefore prohibited by Article 5, § 20, of the Constitution of 1874.

Ordinarily the Highway Commission, as an agency of the State, cannot be sued. *Ark. State Highway Commn. v. Nelson Bros.,* 191 Ark. 629, 87 S.W. 2d 394 (1935). Our cases, however, recognize a clear-cut distinction between the position of the landowner whose suit succeeds in stopping the Highway Commission's project before the damage has occurred and the position of the landowner who delays his suit until after he has been damaged. As we said in *Bryant* v. *Ark. State Highway Commn.,* 233 Ark. 41, 342 S.W. 2d 415 (1961):

> "The suability of the Highway Commission was considered in a series of decisions closely following the *Nelson Brothers* case. In *Ark. State Highway Comm.* v. *Partain,* 192 Ark. 127, 90 S.W. 2d 968, it was held that where the Commission was threatening to take private property without making any provision for compensation, the landowner was entitled to enjoin the Commission from taking the property until an amount sufficient to cover the damages had first been deposited in court. Such an injunction, restraining the commissioners from acting illegally, was not regarded as a prohibited suit against

the State. But where the landowner stood by and permitted the Commission to take, occupy, and damage his lands, he could not maintain an action against the Commission to recover his damages, for such a coercive proceeding would constitute a suit against the State. *Federal Land Bank of St. Louis* v. *Ark. State Highway Comm.,* 194 Ark. 616, 108 S.W. 2d 1077; *Ark. State Highway Comm.* v. *Bush,* 195 Ark. 920, 114 S.W. 2d 1061."

Whether the taking or the damage has yet occurred determines whether the landowner's suit is timely. In the *Partain* case, *supra,* where, as here, there was damage to land not actually taken, the suit was in time, because the plaintiff acted before the Commission started construction. By contrast, other neighboring landowners who intervened in Partain's suit after the damage had been done were too late, for their intervention was a suit against the State. *Ark. State Highway Commn.* v. *Kincannon,* 193 Ark. 450, 100 S.W. 2d 969 (1937). We have indicated that the taking occurs when the owner can no longer use his land for its normal and natural purposes. *State Highway Commn.* v. *Holden,* 217 Ark. 466, 231 S.W. 2d 113 (1950). In an analogous county case the landowner waited too long when he stood by and permitted "substantial road work" to be done. *Miller County* v. *Beasley,* 203 Ark. 370, 156 S.W. 2d 791 (1941). Our holdings were summarized in the *Federal Land Bank* case, *supra:*

"Appellant had, therefore, the right to prohibit the Highway Commission, or any other agency of government, from taking its property until compensation had been paid. It was so expressly held in the case of *Arkansas State Highway Commission* v. *Partain,* 192 Ark. 127, 90 S.W. 2d 968. But if the property owner fails to assert this right and permits the state to take and occupy his property before compensating him, he may not thereafter coerce compensation by retaking the property from the possession of the state. He must thereafter trust the state to deal fairly with its citizens. He then has no other remedy."

In the case at bar the landowners undoubtedly waited too long before they made any effort to prevent the construction of the ramp. The suit was filed on April 20, 1971. Counsel for the plaintiffs, knowing that the project was about to begin, instructed the witness Barnes to examine the site on that date. Barnes testified that holes were being drilled in the pavement on Scott Street, but patrons of the parking lot continued to use the street for a period of ten days to two weeks. A highway department engineer, who kept a daily log, testified that barricades were erected on Scott Street on April 20 and that construction began on April 23. A photograph indicates that the street was completely obstructed by the middle of May. Work on the ramp continued without interference and was virtually complete and in use by the public when the case was tried in June and July of 1972, more than a year later.

The appellees' original complaint was deficient, for it asked that the defendant Commission be enjoined from proceeding with the work "until the defendant has commenced a suit in which the plaintiffs' damages may be ascertained and awarded." In the *Bryant* case, *supra,* we held that a complaint seeking precisely that coercive remedy against the Highway Commission was a suit against the State and therefore not maintainable.

On May 17, after the plaintiffs' access to Scott Street had been blocked, the complaint was amended to assert the cause of action allowed by the holding in *Partain,* "that the defendants be enjoined from commencing or proceeding with the proposed construction . . . until the plaintiffs' damages have been paid, or provision for payment made." On August 4 the trial court sustained a demurrer to the complaint and dismissed the case, as a suit against the State. We reversed that decree, because the complaint, standing alone and making no reference to the commencement or progress of the work, did state a cause of action under *Partain. Flake* v. *Ark. State Highway Commn.,* 251 Ark. 1084, 476 S.W. 2d 801 (1972).

It is apparent that, under our decisions, the appellees' position is untenable. The denial of their access

to Scott Street, which is the injury complained of, occurred not later than the middle of May, 1971. Yet, as far as the record shows, they did not even request the chancellor to stop the progress of the work until more than a year later. No injunctive order was actually entered until after the June, 1972, hearing, at which time the construction work was virtually complete. Thus the trial court's award is in fact a money judgment against the State for a past injury, which is prohibited by our Constitution as construed in the cases cited.

Counsel for the appellees, perforce conceding that "the award may appear to conflict with prior decisions of this court," nevertheless insists that the landowners' inability to sue the State involves a denial of due process of law. We cannot agree. Sovereign immunity was a common law doctrine that originated centuries before the Fourteenth Amendment was adopted. It still exists in many forms. In the *Bryant* case, *supra,* we considered and rejected the same arguments that are now presented by the appellees. We are urged to overrule that decision, but we think it to be sound.

Reversed and dismissed.

BYRD, J., dissents.