STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Respondent,

v.

TEXACO, INC., et al., on exceptions of Teresa M. Vollmer a/k/a Teresa Marie Vollmer, Administratrix of the Estate of Joseph S. Vollmer, a/k/a Joseph Francis Vollmer, Deceased, et al., Appellants.

No. 56938.

Supreme Court of Missouri, Division No. Two.

Dec. 14, 1973.

Robert L. Hyder, Jefferson City, Robert W. Miller, Kirkwood, for respondent.

William R. Kirby, St. Louis, for appellants.

JULIAN M. LEVITT, Special Judge.

This case involves an appeal from a judgment for the defendants in a condemnation proceeding wherein the defendants were awarded a judgment of $60,000. The State of Missouri condemned land in the City of St. Louis for the construction of highway I–44, of which two tracts, Parcel 2205 and Parcel 2206, owned by defendants Vollmer and leased by the defendant The Kroger Company, are involved in this appeal taken by defendants Vollmer and the Kroger Company.

To properly understand the questions presented on this appeal it is necessary to visualize the location of Parcel 2205, Parcel 2206 and their relationship to each other and to the surrounding streets and alleys.

Parcel 2205 contained on its east one-third, a Kroger supermarket building and on its west two-thirds, a parking lot. Parcel 2206 was solely a parking lot with spaces for 91 cars. Parcels 2205 and 2206 were separated by a public alley running east and west (hereinafter sometimes referred to as "alley No. 1"). Parcel 2206 lay south of the east one-half of Parcel 2205, just across alley No. 1. Parcel 2205 was surrounded on the east by a church property, on the west by Jefferson Avenue, on the north by Lafayette Avenue, and on the south by alley No. 1. Parcel 2206 was surrounded on all four sides by public alleys. The (east-west) alley No. 1 separating Parcels 2205 and 2206 opened on the

east into Missouri Avenue and on the west into Jefferson Avenue.

A rough diagram of the properties involved, not drawn to scale, follows:

The plaintiff condemned all of Parcel 2206. Plaintiff's plans called both for the closing off of direct access from Parcel 2205 to Jefferson Avenue and for an exit ramp which would close off alley No. 1 at the west end opening into Jefferson Avenue, thereby causing access to Jefferson Avenue to be completely terminated. The net effect was to reduce defendants' available parking from 135 spaces to 44 spaces and to prohibit direct access to defendants' parking lot on Parcel 2205 from Jefferson Avenue. Ingress to and egress from defendants' remaining parking lot (Parcel 2205) was thus limited to Lafayette Avenue on the north and via alley No. 1 on the south from Missouri Avenue.

Prior to the taking by right of eminent domain, defendants maintained a short retaining wall on the west end of Parcel 2205 along Jefferson Avenue. The only means of entry to the parking lot on Par-

cel 2205 from Jefferson Avenue was via alley No. 1.

Two issues are raised in this appeal. The first concerns the exclusion by the trial judge of certain testimony of Donald J. Rixmann, real estate manager of the St. Louis division of The Kroger Company, who was produced by defendants to show the loss sustained by them by virtue of the severance of the south parking lot (Parcel 2206) from the store building and north parking lot (Parcel 2205) and the loss of access to Parcel 2205 from Jefferson Avenue. Rixmann sought to testify about the results of the survey made by defendant Kroger in January and July, 1969, prior to the taking (August 12, 1969), which showed that approximately one-third of the cars using Kroger's north parking lot (Parcel 2205) entered from Jefferson Avenue via alley No. 1. Plaintiff objected to such testimony and to the proposed introduction of the survey on the ground that the property owners have no compensable rights growing out of the closure of the west end of alley No. 1 because a land owner has no right to go in any given direction on a public street and, presumably, because the injury, damage and inconvenience is common to other members of the public, including other neighborhood land owners, portions of whose land have not been taken (State ex rel. State Highway Commission v. Meier, 388 S.W.2d 855 (Mo.banc 1965)).

Defendants then redefined their position as follows. They are entitled to compensation for loss of access to Jefferson Avenue. If alley No. 1 had not existed they could have had an entrance directly off their own property (Parcel 2205) onto Jefferson Avenue at a point a few feet north of and parallel to the location of alley No. 1. Therefore, the number of cars which would have entered Parcel 2205 from Jefferson Avenue via a private entranceway would be the same as did in fact enter via alley No. 1 and they were entitled to introduce the survey showing the number and percentage of cars entering the (Parcel 2205) parking lot from Jefferson Avenue via alley No. 1. Plaintiff argued to the trial court that it would be speculative as to whether the same number of cars would have used a private driveway as used alley No. 1. The trial court sustained this objection and the survey was excluded from evidence.

Defendants argue that they were denied "just compensation" for loss of access to Jefferson Avenue because the evidence rejected limited the evidence available to the jury on the extent of defendants' damage. Defendants contend that the only "real" evidence, or the only "material, tangible" evidence that the defendants had to offer on the *extent of loss* resulting from condemnation of the right of access to Jefferson Avenue was excluded from the consideration of the jury.

Specifically, defendants claim, "this evidence was essential for the jury to understand that defendants' loss of access would affect at least thirty percent of the vehicular customers that traded with Kroger * * *." This statement from defendants' brief is susceptible to two interpretations. First, it might mean that thirty percent of the customers coming to Kroger's parking lot at Lafayette and Jefferson by automobile would be inconvenienced. Second, it could be taken to mean that Kroger would lose thirty percent of the customers who formerly parked on its north lot.

The first interpretation would not help the jury know how much business Kroger would lose, if any, and would be speculative on this issue. The second conclusion is unsound for there is no way to know how many of the thirty percent of automobile customers who entered Kroger's north (or Lafayette and Jefferson) lot from Jefferson would continue after condemnation to enter by way of Lafayette or by way of alley No. 1 opening from Missouri Avenue.

The excluded evidence would not show "the extent of loss" resulting from the condemnation of the right of access to

Jefferson Avenue, as contended by defendants. The general rule is that the admissibility of evidence in a condemnation case depends upon whether it tends to help the jury in arriving at the issue of value and damages. Missouri State Park Board v. McDaniel, 473 S.W.2d 774, 779 (Mo.App. 1971). Applying this principle to the facts of this case, and despite the argument of plaintiff to the contrary, the excluded evidence might have given the jury some indication of what number and percentage of cars using the north parking lot (Parcel 2205) would have entered the north parking lot from Jefferson Avenue before the condemnation if there had been no alley but instead a private driveway on defendants' land. However, for the jury to conclude from that evidence that such number or percentage of cars would not use the north parking lot and therefore not bring that (or any) number or percentage of patrons to the Kroger store *after* the taking, with a private driveway into Jefferson Avenue cut off, would require the jury to indulge in conjecture and speculation.

■ Whether patrons formerly entering the north parking lot from Jefferson (via alley No. 1) would no longer trade at Kroger and therefore make Parcel 2205 less valuable to an investor, is purely conjectural. The evidence was that before the taking, Parcels 2205 and 2206 together contained parking for 135 cars, that after the taking of Parcel 2206 there remained parking for 44 cars on Parcel 2205. How many cars that formerly parked on Parcel 2206 would after the taking, park on Parcel 2205? Sixty-five percent, or approximately 29, of the cars using the north parking lot (Parcel 2205) before the taking, entered from Lafayette Avenue. Is it not logical to assume that at least fifteen of the 91 cars that formerly used the south parking lot (Parcel 2206) would after the taking, use the north parking? If so, would not the north parking lot be full so that cars entering from Jefferson, even if they could do so, would not be able to use the north lot anyway? These questions demonstrate how misleading to the jury

the proferred evidence would have been on the issue of value and damage. The most that can be said for admissibility is that, on balance, the benefit the jury would derive from having the survey would be offset by the misleading inferences the members of the jury might draw therefrom. Under these circumstances we cannot say that the trial court abused its discretion in excluding the Kroger survey from evidence.

■ The jury was not without evidence about damage due to loss of access to Jefferson from Parcel 2205. Each valuation expert who testified in the case, one for defendants and three for plaintiff, stated that he took into consideration in arriving at his valuation of consequential damage this loss of access. Defendants' witness Harold E. Pollack testified on cross-examination that it was the third of three factors he considered in reducing the value of the total property from $288,000 to $160,000 and that it was "considerably important." He said, on direct examination, that the elimination of accessibility to Jefferson Avenue lessened the fair market value not only for lack of accessibility but also for "identity." Plaintiff's witness Harvey Hyams testified that lack of access to Jefferson Avenue was one of two factors he considered in determining that Kroger and any other tenant who might later occupy the property would pay a lesser rent by twenty percent than Kroger was paying on the date of the taking. Plaintiff's witness Harry G. Herring testified he considered the "limitation of access along Jefferson Avenue" in arriving at a damage figure. Plaintiff's witness Arthur C. Schneider testified that he took into consideration in arriving at his valuation the cutting off of access to Jefferson Avenue, but that this detrimental factor was offset by a benefit of the condemnation, namely, the increased flow of traffic at the corner of Jefferson and Lafayette from the exit ramp of I-44. Thus there was substantial, competent evidence before the jury on the issue of termination of access to Jefferson Avenue and upon which the

jury could base a verdict. State ex rel. State Highway Commission v. Hamel, 404 S.W.2d 736, 738 [2] (Mo.1966); State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc., 470 S.W.2d 313 (Mo.1971).

Moreover, before passing from this point, it is important to note that the appellate courts of this state and most other states have long held that in land damage cases errors in admission or exclusion of evidence will not result in the reversal of verdicts unless there is substantial and glaring injustice. Missouri State Park Board v. McDaniel, supra, 1.c. 774, 778 of 473 S.W.2d; State ex rel. State Highway Commission v. Bowling, 414 S.W.2d 551 (Mo.banc 1967); State ex rel. State Highway Commission v. Eilers, 406 S.W.2d 567, 575 (Mo.1966); 5 Nichols on Eminent Domain (3d edition), § 18.1 [3], pp. 18–22. We find no such injustice here.

The second point raised by defendants is the alleged error of the trial court in overruling defendants' motion to strike the testimony of plaintiff's three expert valuation witnesses, real estate appraisers, made at the close of all the evidence on the ground that plaintiff withheld a more favorable appraisal made on behalf of plaintiff by a real estate appraiser plaintiff never called to testify at the trial in the circuit court. Counsel for defendants advised the trial judge, at the close of defendants' case, that at the hearing before the three commissioners appointed by the trial court, Mr. Coffman of the State Highway Commission advised the condemnation commissioners that based on the appraisals the Highway Commission then had, the damage to defendants' property was $72,500; that this figure was the difference between the *two appraisals* the Highway Commission had obtained. Inasmuch as the plaintiff's three appraisals of damage at the trial in the circuit court were $54,500, $52,950 and $54,000, respectively, it was obvious that at the hearing before the condemnation commissioners plaintiff used an appraisal of over $72,500 by an appraiser not called to

testify at the jury trial on defendants' exceptions to the report of the commissioners (which awarded defendants damages of $118,000).

Defendants contend that they were prohibited from examining the appraisals of the plaintiff's appraisers in the pre-trial discovery while their exceptions were pending trial as a result of the principles enunciated by this court in State v. Jensen, 362 S.W.2d 568 (Mo.1962) and State ex rel. Missouri Public Service Company v. Elliott, 434 S.W.2d 532 (Mo.banc 1968). This contention is a matter we need not here discuss for reasons below set forth. However, see Missouri State Park Board v. McDaniel, supra, 1.c. 775 of 473 S.W.2d.

The essence of defendants' argument under point II of their brief is that plaintiff, an agency of the state government, may not withhold evidence favorable to defendants in this civil proceeding any more than the state can withhold evidence favorable to a defendant in a criminal proceeding, under authority of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We find no merit to this argument.

By its very language (p. 86 of 373 U.S., p. 1196 of 83 S.Ct., p. 218 of 10 L.Ed.2d) Brady v. Maryland obviously applies only to criminal cases; whereas § 523.050(2) V.A.M.S. specifically provides that where written exceptions are made to the report of commissioners in a condemnation case, a new appraisement shall be made by a jury under the supervision of the court "as in ordinary cases of inquiry of damages" and are triable de novo in accordance with the procedure applicable to ordinary civil actions. State ex rel. State Highway Commission v. Vorhof-Duenke Company, 366 S.W.2d 329, 336 [4] (Mo. banc 1963). In ordinary cases of inquiry of damages there is no requirement to call to testify every witness obtained by a party. Wilson v. Miss Hulling's Cafeterias, Inc., 360 Mo. 559, 229 S.W.2d 556, 562 [9] (Mo.1950). Likewise, in a condemnation

**290**

case the condemnor is under no obligation to submit all appraisals which it has had prepared. 5 Nichols on Eminent Domain § 18.1(1). In a New Hampshire case, O. K. Fairbanks Company v. State, 108 N.H. 248, 234 A.2d 108 (1967), where the facts are somewhat parallel to the case at bar, the court said at 111:

"Our Legislature has provided for the manner of appeal and the proceedings therefor in RSA ch. 233. There is no indication in this statute, expressed or implied, that the proceedings or appeal were intended to be other than the usual adversary proceedings between parties. We find nothing in the statute to indicate that the Legislature intended to place on the State any burden to produce evidence which a party in the usual adversary action would not be compelled to offer. [Citations] Consequently the State was under no duty to offer the appraisal or call the appraiser as a witness at the trial and was at liberty to pursue that course if deemed in the best interest of the public which is also entitled to have the damages assessed in a just manner. 27 Am.Jur.2d, Eminent Domain, s. 266, p. 53."

The Texas Supreme Court has held, State v. Biggers, 360 S.W.2d 516, 518 (1962), "[a] decision [by the condemnor] not to call as a witness one employed to investigate and evaluate facts and report an expert opinion is not a suppression of evidence."

We deem it clear that plaintiff was not compelled to call as a witness every expert appraiser consulted by it and whose opinion testimony would have been favorable to defendants.

The judgment of the trial court is affirmed.

HENLEY, P. J., MORGAN, J., and DONNELLY, C. J., concur.

FINCH, J., not a member of Division when cause was submitted.