# ARKANSAS STATE HIGHWAY COMMISSION
## *v.* FIRST PYRAMID LIFE INSURANCE
## COMPANY OF AMERICA et al

78-277                                    579 S.W. 2d 587

Opinion delivered April 2, 1979
(In Banc)
[Rehearing denied May 21, 1979.]

418

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Spitzberg, Mitchell & Hays,* by: *John P. Gill,* for appellees.

CONLEY BYRD, Justice. Appellant Arkansas State Highway Commission by eminent domain took 58.39 acres from three separate tracts of land, the title of which was held by appellee First Pyramid Life Insurance Company of America, for construction of the East Belt Freeway where it connects with I-40. Appellant deposited $44,960.00 as estimated just compensation at the time of the taking. Appraisal witnesses Jack Farris, James Larrison and Wesley Adams called on behalf of appellee testified to damages of $550,150, $640,950 and $495,000 respectively. For appellant Dave Roberts placed damages at $73,743 and William B. Putnam placed the damages at $46,945. The jury returned a verdict for $495,000. For reversal of the judgment entered on the jury's verdict, appellants contend:

"I. The trial court erred in permitting Wesley Adams to be called as a witness by the appellees over appellant's objection.

II. The trial court abused its discretion in allowing appellees to call Wesley Adams in rebuttal.

III. The trial court erred in admitting into evidence certain transactions between 1st Pyramid and Harris Cattle Company.

IV. The trial court erred in not striking the value testimony of appellee's expert witness, Jack Farris, relating to his before value.

V. The trial court erred in not striking the before value testimony of appellee's expert witness, James Larrison.

VI. The trial court erred in not granting a mistrial.

VII. The trial court erred in not allowing appellant's Exhibit "D" and the testimony relative thereto into evidence.

VIII. The trial court erred in not permitting appellant to introduce its proffered Exhibit No. 11."

POINT I. Appellant makes two contentions under this point — *i.e.*:

"(1) The trial court erred in allowing appellees to call Wesley Adams, an appraisal expert, as a witness in order to ascertain the amount of his appraisal, and

(2) The trial court erred in permitting appellee to bring out that Wesley Adams had been hired by appellant as an expert appraisal witness and the appellant was not calling him as a witness."

Both questions were virtually answered in *Arkansas State Highway Comm'n* v. *Witkowski,* 257 Ark. 659, 519 S.W. 2d 743 (1975), wherein we cited *Boyles* v. *Houston Lighting and Power Company,* 464 S.W. 2d 359 (Tex. 1971), *State ex rel State Highway Comm'n* v. *Texaco, Inc.,* (Mo. 1973) and *Logan* v. *Chatham County,* 113 Ga. App. 491, 148 S.E. 2d 471 (1966). Those cases hold that neither party to a condemnation case is bound by rejected opinions of expert witnesses employed by them to appraise property being condemned and cannot be prejudiced by the admission in evidence of rejected appraisals made at their instance. All of those cases also hold that testimony as to the original employment of the expert is not pertinent to the issue of just compensation and when admitted over the objection of the party who originally employed the expert the same constitutes prejudicial error requiring a new trial.

It follows that the trial court erred in permitting appellee to show that Wesley Adams had been employed by appellant to make an appraisal of the estimated just compensation due.

POINT II. In view of the fact that Adams if called must be called as a witness for the landowner, this alleged error is not apt to occur on a retrial.

POINTS III. and VII. The record shows that appellee in the purchase of the property from Harris Cattle Company had some kind of an agreement for the sharing of development costs with Rector, Phillips and Morse, Inc. The 1973 deed from Harris Cattle Company to appellee recites a consideration os $10,000 paid and the execution of a Vendor's Lien Note in the amount of $2,000,765.30 with interest at 4%. The deed provided that the lien retained could be released upon any part of the property by the payment of $7,700.00 per acre. The Vendor's Lien Note provided:

## "VENDOR'S LIEN NOTE

$2,000,765.30                    September 6, 1973

First Pyramid promises to pay Harris Cattle Company $2,000,765.30 with intersst at rate of 4% per annum. Principal sum due September 6, 1979. Interest due and payable March 6, 1975, and annually then after. Note is evidence of unpaid balance of purchase price for 260 acres and payment of note is secured by Vendor's lien retained in deed between parties. Harris not entitled to obtain a judgment against First Pyramid in event of default — sole and exclusive remedy of Harris is to retain any payments previously made and require First Pyramid to reconvey the said land, or that part which they still have. Upon reconveyance it shall be by Warranty Deed free and clear of any liens. If upon default First Pyramid fails to reconvey upon written demand by Harris within 10 days, then Harris can obtain judgment plus 10% interest and attorney's fees."

Rudolph S. Del Donno, the Senior Vice-President of appellee in charge of investments, testified that appellee had laid out for improvements $1,425,000. That the North Little Rock Water Department, Plough Incorporated [The Maybelline Plant], North Little Rock Chamber of Commerce and Fifty For The Future had reimbursed appellee for $640,-

318.00, leaving appellee's unreimbursed improvement costs at $784,682.00. Other than for the lands involved in this litigation appellee according to the terms of the Vendor's Lien Note had paid $57,000 on the principal. The witness was permitted to show by cancelled check that for the lands involved in the eminent domain action, appellee had paid to Harris Cattle Company at the rate of $7,700 per acre for a total of $448,500. Mr. Del Donno also stated that at the request of appellee's counsel in a lawsuit in chancery court between appellee and Harris Cattle Company, he had executed a deed of the property back to Harris Cattle Company but he did not know whether the deed had been accepted.

Appellant to rebut the foregoing proof sought to call Allan W. Horne, a member of appellee's board of directors and its legal counsel in the chancery court action between appellee and Harris Cattle Company, to show how appellee was attempting to extricate itself from any obligation on the Vendor's Lien Note by trying to return the land to Harris Cattle Company. In its proffer of proof appellant elicited from Horne that appellee was not necessarily a volunteer in paying the $7,700 per acre to Harris Cattle Company for the 58.39 acres involved in this eminent domain action — *i.e.* the $448,500 check — but that the obligation arose because the Vendor's Lien Note failed to make an exception in cases of eminent domain actions. However, the trial court excluded all of the testimony of Horne.

To support the action of the trial court in permitting appellee to show the price that it paid for the land, appellee relies upon *Arkansas State Highway Commission v. Hubach*, 257 Ark. 117, 514 S.W. 2d 386 (1974), where we stated:

"When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is *one of the most important pieces of evidence* in determining its present value. However, this assumes that the sale was recent, was a voluntary transaction between parties each of whom was capable and desirous of protecting his own interest, and that no change in conditions or marked fluctuation in values has occurred since the sale. A price paid under such conditions is a

circumstance which a prospective purchaser would seriously consider in determining what he himself should pay for the property. As evidence before a jury, it consumes little time in introduction and raises few collateral issues, so that every argument is in favor of its admissibility."

Based upon the foregoing we agree with appellee that the trial court did not err in permitting appellee to show what it had paid for the land. It does not follow that the court was correct, in refusing to permit appellant to show through Horne, that appellee was attempting to extricate itself from the transaction. Rules 401 and 402 of the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Supp. 1977) provides:

"Rule 401. Definition of 'Relevant evidence.' — 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402. Relevant evidence generally admissible — Irrelevant evidence inadmissible. — All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible."

In view of the foregoing rules the appellant was certainly entitled to produce any evidence that it might have to show the Two Million Dollar transaction between appellee and Harris Cattle Company was a sick or sham transaction. Consequently, the trial court erred in refusing to admit the testimony of Horne.

POINT IV. Jack Farris, called as a real estate expert by appellee, testified that in determining that the fair market value of the property taken had a fair market value of $569,-425 he considered that the highest and best use of the property was for industrial purposes. Farris stated that he used the comparable sale approach in appraising the property.

The first comparable sale he used was First Pyramid Life Insurance Company to Pulaski Equipment Company, 5 acres sold for $21,800 per acre. The second sale was First Pyramid Life to Kenneth Penebaker, one acre sold to Twin City Bank for $53,000. The third sale was First Pyramid to Mapco, an easement at $12,000 per acre. The fourth sale was Faulkner and Saterra to Southwestern Bell, eight acres at the corner of I-40 and Highway 161 at $22,500 per acre. Farris also used the sale of Winrock Homes in 1976, next to the Southwestern Bell tract, at $12,148 per acre for 14.89 acres. On cross-examination Farris stated that he did not consider the Penebaker purchase (Twin City Bank) as comparable. He was not sure whether Mapco had the power of eminent domain. Neither did he know whether Southwestern Bell had the power of eminent domain for the eight acre tract.

At the conclusion of Farris' testimony appellant moved "to strike the before value testimony . . . and consequently the figure on just compensation . . . on the grounds he has given no fair and reasonable basis for his value." Appellant contends here that the sales used by Farris were either sales to a condemning authority or sales which were located near interchanges, small in size and in developed areas and consequently not comparable.

The trial court was not asked to exclude the Mapco and Southwestern Bell sales on the grounds now suggested and, consequently, committed no error. However, since the issue is likely to arise on a retrial, we point out that sales to one having the right of eminent domain do not ordinarily fall in the category of voluntary sales in the ordinary course of business and, consequently, are not fair criteria of value for purposes of comparable sales in determining the just compensation due in eminent domain actions, *Arkansas Power & Light Company v. Harper*, 249 Ark. 606, 460 S.W. 2d 75 (1970). The party relying upon comparable sales to show estimated just compensation has the burden of proving that such sales are voluntary. *May v. Dewey*, 201 Va. 621, 112 S.E. 2d 838 (1960). As pointed out in *Transwestern Pipeline Company v. O'Brian*, 418 F. 2d 15 (5th Cir. 1969), the burden is a heavy one when the

purchaser of the proposed comparable sale falls in the category of those possessing the power of eminent domain.

As to the second contention that the comparables used by Farris were located near interchanges, small in size and in developed areas, we cannot say from the record as abstracted that appellant demonstrated that Farris had no fair and reasonable basis for his value. As pointed out in *Arkansas State Highway Commission* v. *Russell*, 240 Ark. 21, 398 S.W. 2d 201 (1966), where the testimony shows only a weak or questionable basis for the opinion of the expert, the issue becomes one of credibility for the fact finder rather than a question of law for the court. Thus, the mere showing that an expert witness uses an eight and a fourteen acre tract as a comparable tract for appraising three parcels of property comprising 58.39 acres does not as a matter of law show that the witness has no fair or reasonable basis for his opinion.

POINT V. James Larrison, an expert witness for the landowner, testified that estimated just compensation for the three tracts involved in the taking would total $640,950. On cross-examination he testified that he considered the Plough sale, the Mack Truck five acre sale, the Winrock sale north of Protho Interchange and the Southwestern Bell sale just north of the Winrock sale. He also considered two sales in the Little Rock Port development, *i.e.*, Reynolds Metal consisting of 17.62 acres and the 7 ¼ acre Hershey sale. Larrison admitted that the demand for industrial sites between the period of 1973 to January, 1978, was stagnant all over Arkansas.

Following Larrison's testimony, appellant moved to strike his before value testimony and, consequently, his figure of just compensation on the grounds that "he has given no fair and reasonable basis for his value testimony." Appellant now contends that the sales used by Larrison were not comparable and that there was no competent testimony as to the value of the property condemned as industrial property.

We have searched appellant's abstract of Larrison's testimony and failed to find any statement by Larrison that he relied upon the enumerated sales as being comparable. So far as the abstract shows Larrison only considered the

enumerated sales in arriving at his estimated just compensation. As pointed out in *Arkansas State Highway Commission* v. *Johns*, 236 Ark. 585, 367 S.W. 2d 436 (1963), the admissibility of the opinion of a real estate expert is not conditioned upon his stating facts upon which the opinion is based. Furthermore, once an expert has given his opinion, the burden shifts to the condemnor to demonstrate that the expert had no basis for his opinion. Consequently, we cannot say that the trial court erred in refusing to strike Larrison's testimony.

Larrison's statement that the demand in Arkansas for industrial sites was stagnant for five years prior to the taking, while detracting from the present value of the land for industrial sites, cannot be taken as a matter of law to mean that no land in Arkansas had a value for use as an industrial site.

POINT VI. In view of the action of the trial court in striking that portion of witness Byron Morse's testimony with reference to the use of federal funds in the building of a highway interchange, we do not rule upon this contention as it is not apt to arise upon a new trial.

POINT VIII. Appellant's proffered Exhibit # 11 is an aerial photograph made on the date that the eminent domain action was filed. Since the witness admitted that it was not a photograph of the lands taken by the appellant, we cannot say that the trial court abused its discretion in refusing to admit the photograph.

Reversed and remanded.

FOGLEMAN, J., dissents in part.

JOHN A. FOGLEMAN, Justice, dissenting in part. I agree that the judgment must be reversed because of the exclusion of the testimony of Allen Horne. I cannot agree, however, with the court's holding as to the testimony of Wesley Adams.

The trial of any lawsuit should be a search for truth, not a "cat and mouse" game. This should especially be true in an eminent domain suit. It is a procedure for seeking a truth bas-

ed on an idealistic concept, that of "just compensation" for "private property . . . taken, appropriated or damaged for public use." Art. 2, § 22, Constitution of Arkansas. The application of this concept in a realistic way is essential to a government which puts more emphasis on the rights of the individual and on the concept of private property than on sovereign rights. Under the Constitution of Arkansas, great emphasis is put upon the rights of the individual by Art. 2. Specifically, in the context of this case, § 22 of that article expresses the philosophy of this state in seeking to balance the inequality inherent in a contest between the might of the sovereign and the relative impotence of its subject. Before the "State's ancient right of eminent domain" is "conceded" by Sec. 23, this document pronounces in Sec. 22 that "[t]he right of private property is before and higher than any constitutional sanction." That section goes further than most American constitutions in that it requires just compensation for damaging private property, as well as for its taking. The fundamental basis of the American system is the accentuation of the rights of the citizen-subject, accompanied by limitations on sovereign power.

In this case, the ultimate power of the sovereign is pitted against the private citizen-subject, who bears the burden of proving by a preponderance of the evidence the amount of "just compensation" due him for his property taken by the sovereign. The combatants in this contest are not equal. The Arkansas State Highway Commission is the state in these proceedings. Once we did not think so, especially where the power of eminent domain was exercised. *Campbell* v. *Arkansas State Highway Com'n.*, 183 Ark. 780, 38 S.W. 2d 753. But later, the state's sovereign immunity was extended to this commission. *Arkansas State Highway Com'n.* v. *Dodge,* 190 Ark. 131, 77 S.W. 2d 981. All the might of the sovereign became fully vested by *Arkansas State Highway Com'n.* v. *Nelson Bros.,* 191 Ark. 629, 87 S.W. 2d 394, and has remained so continuously. It was extended to eminent domain actions by *Arkansas State Highway Com'n.* v. *Kincannon,* 193 Ark. 450, 100 S.W. 2d 969. The continuous emphasis placed upon the posture of the commission is illustrated in the following unbroken line of cases, some of which admittedly produced extremely harsh results by leaving the property owner to the grace of the

sovereign, i.e., by "filing an administrative claim for such relief as the State may see fit to provide." See *Bryant* v. *Arkansas State Highway Com'n.*, 233 Ark. 41, 342 S.W. 2d 415 and the following cases: *Arkansas State Highway Com'n.* v. *Partain,* 193 Ark. 803, 103 S.W. 2d 53; *Federal Land Bank of St. Louis* v. *State Highway Com'n.,* 194 Ark. 616, 108 S.W. 2d 1077; *Arkansas State Highway Com'n.* v. *Bush,* 195 Ark. 920, 114 S.W. 2d 1061; *Arkansas State Highway Com'n.* v. *Palmer,* 222 Ark. 603, 261 S.W. 2d 772; *Arkansas State Highway Com'n.* v. *McNeil,* 222 Ark. 643, 262 S.W. 2d 129; *Roesler* v. *Denton,* 239 Ark. 462, 390 S.W. 2d 98; *Arkansas State Highway Com'n.* v. *Lasley,* 239 Ark. 538, 390 S.W. 2d 443; *Arkansas State Highway Com'n.* v. *Cunningham,* 239 Ark. 890, 395 S.W. 2d 13; *Arkansas State Highway Com'n.* v. *Flake,* 254 Ark. 624, 495 S.W. 2d 855; *Arkansas State Highway Com'n.* v. *Rice,* 259 Ark. 190, 532 S.W. 2d 727; *Tri-B Advertising, Inc.* v. *Arkansas State Highway Com'n.,* 260 Ark. 227, 539 S.W. 2d 430. Casting aside "due process" and "equal protection" arguments that might be advanced[1] against barring inverse condemnation where the taker (or "damager") is the Arkansas Highway Commission, via the dilution of Art. 2, § 22 by making Art. 5, § 20 superior, the appellant in this case is the complete sovereign in its field. That sovereignty has been more firmly established since, in the wisdom of the people of Arkansas, the ultimate sovereign (see Art. 2, § 1, Constitution of Arkansas), Amendment 42 was adopted.

Thus, when the property was taken, the appellee bore the burden of showing, to the satisfaction of a jury, by a preponderance of the evidence, the amount by which it would be justly compensated. A preponderance of the evidence is another concept that is more susceptible to perception than definition. We spoke of it in *Titan Oil & Gas Co.* v. *Shipley,* 257 Ark. 278, 517 S.W. 2d 210. There we said:

> The weight to be given evidence depends upon its effect in inducing belief. *Romines* v. *Brumfield,* 199 Ark. 1066, 136 S.W. 2d 1023. Where evidence is in conflict, that which preponderates is the evidence entitled to the greater weight in respect to credibility. *Missouri Pacific*

---

[1] It appears that we have been faced with such an argument only once. We somewhat summarily rejected it in *Arkansas State Highway Com'n.* v. *Flake,* 254 Ark. 624, 495 S.W. 2d 855.

*Railroad Co.* v. *Hancock,* 195 Ark. 414, 113 S.W. 2d 489. There is a preponderance of the evidence only when there is a preponderance of all reasonable inferences that might be drawn to prove the principal facts sought to be established, sufficient to outweigh all other contrary inferences. *Smith* v. *Magnet Cove Barium Corp., [212 Ark. 491, 206 S.W. 2d 442].*

*In Smith* v. *Magnet Cove Barium Corp.,* supra, we had more to say on the concept. Omitting that portion of the language upon which we relied in *Titan,* we said:

*** The term does not mean preponderance in amount, but implies an overbalancing in weight. *United States* v. *Mancini,* D.C. Pa., 29 F. Supp. 44-5. ***

The words "weight," "credibility," "overbalancing," "degree," "force," "tipping of the scales," and others of similar connotation, have been used by opinion writers so long that one would suppose their inclusion in "preponderance of the evidence" gives to the term a fixed, inflexible meaning, applicable alike to all cases where the rule invokes the use. Much must be left to the Judge who considers the evidence. Nature of the testimony, demeanor of the witness if the hearing is oral, *opportunity for acquiring the information it is sought to impart, interest in the subject matter or in the parties to be affected,* bias based upon political, secular, or novel social beliefs, regard for accepted conventions in dealing with conduct and behavior, *environment, a capacity to understand,* fidelity to the oath that has been taken, — these and other considerations are, or may be, components of that general result called "preponderance." The number of witnesses is not controlling, and may even be unimportant. It is possible for cumulus error to overshadow intrinsic truth, and the *statement of a single witness may be entitled to more consideration than assertions of a dozen whose source of knowledge or capacity for appraising value impairs the probative force of testimony.* [Emphasis mine.]

In arriving at the truth as to just compensation, there are rules of evidence to be followed. The most recent ones are the

Uniform Rules of Evidence, set out in Ark. Stat. Ann. § 28-1001 (Repl. 1976). They are to be construed to -secure fairness in administration and promotion of growth and development in the law of evidence, to the end that truth may be ascertained and proceedings justly determined. Rule 102. Relevant evidence is evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401. The evidence in this case falls into the category of expert opinion testimony, which is admissible when specialized knowledge will assist the trier of fact to understand the evidence or determine a fact issue. In such a case, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify by stating his opinion. Rule 702.

Wesley Adams fell into this category. What is important, however, is the weight to be given his testimony. Appellee should have been permitted to show every factor which might persuade the jury to give his testimony more weight than it gave that of other witnesses. The only prejudice to the sovereign in this case was that there were compelling reasons for giving his testimony more weight than might have been given testimony of those who had been employed by appellee for the express purpose of giving an opinion or by others employed by the sovereign, whose opinions found greater favor in its sight.

The question as to the showing that Adams was employed to make an appraisal for the Arkansas State Highway Commission must be examined in the interest of fairness, and in light of emphasis on the rights of the subject and the preservation of the right of private property.

I suggest that it is very important that Adams was caused to make his appraisal and express his opinion as to just compensation at a very critical stage of the proceeding. It was at the time the sovereign was to decide the amount of money it would deposit in the registry of the court to assure the private property owner that it would receive just compensation, in order that the sovereign might take possession of the

property before a jury decided the amount which constituted just compensation.

Appellant must have thought that Adams' testimony would be given considerable weight. During discovery procedures, it successfully avoided disclosing the fact that Adams had made an appraisal for it until it was compelled to do so by the trial court. When Wesley Adams was called as a witness by appellee, appellant objected that his appraisal was privileged (but it was not). Appellant seems to have abandoned that objection. It further made the objection that use of his testimony should be prohibited on the ground that Adams had a contractual relationship with the Arkansas State Highway Department.

It was important for the jury to know the purpose for which Adams made his appraisal. It was also important for the jury to know that this expert had not been employed by anyone who had any interest in the lands taken. Appellant says that it should not be put in the position of having to explain why it did not choose to use Mr. Adams as one of its expert witnesses. Why not? It says in its brief that the reason was that he considered, as a basis for his opinion, the transaction between Harris Cattle Company and First Pyramid Life Insurance Company, the details of which we hold to be admissible evidence on retrial. Appellant is still going to have to explain why this transaction does not afford a basis for an opinion as to the land value, even if Adams does not testify. Other witnesses used by appellant also used this transaction as a basis. Furthermore, appellant informs us that Adams' appraisal, and all other appraisals, are reviewed by a reviewing appraiser, who may reject an appraisal based upon a factual consideration he considers inaccurate. If the reviewing appraiser is competent to perform his job, why can't he show the inadequacies of the appraisal that caused it to be rejected? What is there about the fact that Adams submitted an appraisal that was rejected by the party who employed him that would arouse passion in the breast of a juror or embed prejudice in his mind? Prejudice cannot be inferred from the fact that the jury verdict was for the exact compensation that **was just, in the opinion of Adams. It simply indicates that the** jury found that his testimony carried the greatest weight.

It was also important for the jury to know that Adams was under contract with appellant to make appraisals when he testified.

I would suggest that the majority has a new definition for "reconsidered." The rule stated in *Phillips* was to "be reconsidered." In today's opinion the majority says that the questions posed by appellant were "virtually answered" in *Arkansas State Highway Com'n. v. Witkowski,* 257 Ark. 659, 519 S.W. 2d 743. The two terms are certainly not synonymous. Furthermore, a different question was posed in *Witkowski,* i.e., whether a party to an eminent domain action could present evidence to a jury that the adverse party had used appraisers that were not called to testify. In this case, the appraiser in question was called to testify. I am unable to see how *Witkowski* answered the question.

I am convinced that the cases cited by the majority in support of its position are not sound. One of them does not seem to me to support that position at all. That case is *State Highway Com'n. v. Texaco, Inc.,* 502 S.W. 2d 284 (Mo., 1973). In that case, the landowner moved to strike the testimony of three expert valuation witnesses on the ground that the state withheld an appraisal by a fourth such expert, more favorable to the landowner than the other three. The landowner sought to equate this action with that of the state in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), where evidence favorable to the defendant was withheld by the state. Naturally the court held *Brady* inapplicable. Furthermore, there the landowner knew the value put on his land by this expert.

I am willing to join with the court in holding Adams' testimony admissible when called by appellee. In that respect, I am persuaded by cases cited by appellee such as *State* v. *Steinkraus,* 76 N.M. 617, 417 P. 2d 431 (1966); *Town of Thomaston* v. *Ives,* 156 Conn. 166, 239 A. 2d 515 (1968), and cases cited in those opinions. But I also agree with the holding in *City of Baltimore* v. *Zell,* 279 Md. 23, 367 A. 2d 14, that the matter of admitting the fact that the appraiser had been employed by the condemning authority is a matter lying

in the sound judicial discretion of the trial court. The Maryland court said:

> *** We also have no disagreement with the general principle that a party ordinarily may not sustain the credibility of his own witness absent an attack upon credibility by the other side. *** Nevertheless, we believe that the opinions in the above-cited cases, and the City's position in the instant case, represent too rigid an application of the general principle.
>
> The rule that one cannot bolster the credibility of his own witness, absent an attack upon credibility by the other side, is not without exception. *** Moreover, the rule is usually applied in completely different circumstances than presented in the instant case, such as an attempt to call an additional witness to testify concerning the good character for veracity of the witness or an attempt to offer a prior consistent statement of the witness solely for the purpose of supporting his veracity. *** In those circumstances, as Wigmore points out, valuable trial time is taken up by the introduction of unnecessary and often cumbersome evidence, as an unimpeached "witness may be assumed to be of normal moral character for veracity . . . " *** However, merely asking a witness a brief preliminary question concerning his employment in connection with the case is not subject to this same objection.
>
> It is a routine practice in trials for an attorney to ask his witness certain preliminary questions which may not be relevant to the issues being litigated, which may go beyond mere identification and which are designed to show that the witness will be somewhat credible or not biased in favor of the side calling him. For example, the educational background or professional status or employment position of a non-expert witness may be asked, or the witness's lack of prior contact with the side who has called him may be brought out. These questions give the jury some knowledge of the individual and a more complete perspective in considering his testimony. *** [Citations omitted.]

I believe that the majority has gone too far in indicating that Adams' testimony was not properly admitted in rebuttal, and in attempting to control the trial court's discretion in that respect on retrial. It did tend to rebut testimony by the two expert witnesses presented by the state. One of them had been employed the week before the trial, and his identity first disclosed to appellee virtually on the eve of trial.

In all other respects, I agree with the majority opinion.