**Robert HARP and Shannon Harp, individually and on behalf of their minor child, Megan Elizabeth Harp, Plaintiffs,**

v.

**Jim C. CITTY, M.D., White County Memorial Hospital and Searcy Medical Center, P.A., Defendants.**

**No. LR–C–93–785.**

United States District Court,
E.D. Arkansas,
Western Division.

April 10, 1995.

Steve Quattlebaum, Little Rock, AR, for plaintiffs.

Rick Beard, Little Rock, AR, for defendants.

### ORDER

WILSON, District Judge.

### BACKGROUND

This case is before the Court on Plaintiffs' Motion to Compel, and request for sanctions. The Court overruled the Defendant hospital's objections at the conclusion of a hearing held on October 27, 1994. This order supplements that ruling and addresses sanctions.

This is a medical negligence case in which Plaintiffs allege Defendants were negligent during the birth of Megan Elizabeth Harp, Plaintiffs' child. The deponent, Ms. Phyllis Fitzgerald, a nurse, was on duty at Defendant hospital at the time Miss Harp was born. She assisted in resuscitation attempts, but was not present during delivery. She did, however, have "some type of supervisory authority"[1] over the nurses who were actually present during the delivery. Ms. Fitzgerald has a BS degree in nursing and is a licensed nurse with certificates of continuing education in the areas of fetal heart monitoring and advanced fetal heart monitoring. She often worked in the delivery room at the hospital both before and after the subject delivery. At the time Plaintiffs attempted to take her deposition (August 30, 1994) she had not worked for the hospital for more than a year.

Plaintiffs' counsel attempted to set the deposition of Ms. Fitzgerald by agreement (happily, a practice commonly followed in Arkansas), but was informed by the hospital's counsel that Ms. Fitzgerald was no longer an employee of the hospital, and that her attendance could not be assured. Her deposition was then set by notice and subpoena. During the attempted deposition, Plaintiffs' counsel was advised, for the first time, that counsel for the hospital also represented Ms. Fitzgerald.

At the deposition, after several background questions, Plaintiffs' counsel asked Ms. Fitzgerald questions regarding fetal heart monitoring. At this point, counsel for the hospital objected and instructed the witness not to answer. The pertinent questions, objections, and instructions not to answer are as follows:

Q. Yes. What do you in your mind and in your training, what are you supposed to do when you observe fetal distress?

A. It depends on which interventions. The first thing we do is put oxygen on the mother, turn her on her left side. If she's on Pitocin, we shut the Pitocin off and notify the physicians stat.

Q. By "stat," do you mean quickly?

A. Very quickly.

Q. If the fetal distress continues, what do you do?

MR. BEARD: Excuse me. I object and instruct the witness not to answer. You're asking her for expert testimony. She had nothing to do with prenatal care of this particular patient. She's here to give you factual information about what she did in this case. Since she had nothing to do with prenatal care, then what you're asking her for is expert testimony about what she would do in a case, a hypothetical case, and I think that calls for expert testimony. And she's not here to give expert testimony. She's here as a factual witness.

MR. QUATTLEBAUM: Mr. Beard, are you presenting (sic) this witness?

MR. BEARD: She is—she is an employee—a former employee of the White County Memorial Hospital—

MR. QUATTLEBAUM: Right.

---

1. At the October 27 hearing, counsel for the hospital made this statement, although he denied knowledge of the specific nature of this authority.

MR. BEARD: —that you have sued. . Yes.

MR. QUATTLEBAUM: My question is, are you representing this witness?

MR. BEARD: That is correct.

MR. QUATTLEBAUM: And are you instructing this witness, who is not now an employee of the hospital, who was subpoenaed here for this video deposition, not to answer my questions about hypothetical questions?

MR. BEARD: Yes, I am.

MR. QUATTLEBAUM: Just so our record's clear.

Q. And so that our record is perfectly clear, Ms. Fitzgerald, let me ask you these questions and observe Mr. Beard's testimony and don't answer the questions. And Mr. Beard, if I ask her a question that you don't have an objection to during this next full period, please let me know so that she can answer those.

MR. BEARD: Fine.

Q. (BY MR. QUATTLEBAUM) I would like to ask you about your opinion on what you do in response to bradycardic situations, if I'm using the term properly, or situations where you observe a lower than 100–beat–per–minute heart rate on a fetus, a tachycardic situations where you observe a heart rate of more than 160 beats per minute, and especially those situations where you observe that where there's little or no variation in that heart rate for a period of time, more than 60 seconds, more than two minutes, more than three minutes, more than four minutes and so on all the way to 30 minutes. I'd like to ask you those questions separately, each time both in reference to tachycardic situations and bradycardic situations and how you were trained both in your training at White County and your training that you obtained anywhere else to respond to those situations.

And as I understand it, Mr. Beard, you're instructing her not to answer any of those questions?

MR. BEARD: That is correct. I will further say that if at any point in time where we intend to call Ms. Fitzgerald as

a—an expert witness, we'll notify you and give you an opportunity to depose her as an expert.

\* \* \* \* \* \*

Q. Was it unusual or out of the ordinary for some tissue to be exposed?

MR. BEARD: I'm going to object and instruct her not to answer.

MR. QUATTLEBAUM: Same objection, Mr. Beard?

MR. BEARD: Same objection.

MR. QUATTLEBAUM: And again, so that our record's clear, Ms. Fitzgerald, I'd ask you a number of questions about that.

And Mr. Beard, will you recognize that I would have asked her a number of questions if—without your objection?

MR. BEARD: Certainly.

\* \* \* \* \* \*

Q. And when it says I.V. Oxytocin 10 units and 500 milliliters RL at three to six milliliters/hour, what does that mean and how do you do it?

MR. BEARD: Excuse me. Now I don't have any objection to your asking her what that means, but asking her how to do it is requesting expert testimony and I would object to that.

Q. (BY MR. QUATTLEBAUM) Okay. let me ask it this way: How did you to (sic) do it when you did it?

MR. BEARD: Well, that's what I object to.

MR. QUATTLEBAUM: I'm not asking her an opinion. I'm asking for a fact how she did it on occasions whenever she was the one that did it.

MR. BEARD: No. I think you're asking her for expert testimony. I—I'm not going to argue with you about it, but let me tell you what my objection is. This is not testimony that—that is physically related to this case involving this particular witness. Secondly, it is testimony that is outside the realm of lay people and requires a person with expert training and expertise to answer. That's the reason I'm objecting and instructing her not to answer. Now, you can ask her what that

means and she can read that to you. I don't have any problem with that.

\* \* \* \* \* \*

Q. Then Part II to that, is that also part of this same standing order where it says increase Oxytocin infusion three to six per hour? See—

A. Yes, sir.

Q. —II? And it says in parentheses again one to two milliunits per hour every 30 minutes. Does that mean you can turn up the volume that much every 30 minutes?

MR. BEARD: I object and instruct her not to answer.

Q. (BY MR QUATTLEBAUM) In your experience, did you do that, ma'am?

MR. BEARD: I object and instruct her not to answer.

The next day (August 31, 1994), during the deposition of another nurse, similar objections and instructions not to answer were made. The deposition was interrupted and a conference call was placed to the Court (pursuant to the Court's pre-trial order which requires such a call as a prerequisite to filing a motion to compel). An on-the-record telephone hearing was conducted, and the court overruled the objections (a Letter–Order was entered and is attached to this Order as Exhibit A). During this telephone hearing counsel discussed the problems encountered during the Fitzgerald deposition, and the Court directed counsel to brief the issues for an October 27, 1994 hearing.

The hospital's objections are bottomed upon Ark.Code Ann. § 16–114–207(3) (1987) and upon the so-called "conscriptive witness rule."

### DISCOVERY IN GENERAL

Rule 1 of the Federal Rules of Civil Procedure directs that these rules, "... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." All too often nowadays discovery has become an industry unto itself, and, unfortunately, the admonition in Rule 1 is forgotten. As a result, in 1993, substantial changes were made to Rule 26 and related discovery rules. Because litigants in Arkansas were not having undue problems in getting their cases resolved under the existing rules, the Eastern and Western Districts of Arkansas "opted out" of several of these changes. Nonetheless, some of the 1993 amendments to the discovery rules are applicable in this district, and the philosophy prompting the other changes is instructive.

The changes to Fed.R.Civ.P. 30 are applicable, and Subsection (d)(1) provides:

.... Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence as directed by the court, or to present a motion....

With respect to the 1993 amendments to Rule 30, the Notes of Advisory Committee on Rules read, in part, as follows:

.... Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond....

\* \* \* \* \* \*

.... Directions to a deponent not to answer questions can be even more disruptive than objections. The second sentence of new paragraph (1) prohibits such directions except in the three circumstances indicated....

One of the primary reasons that a party may choose a deposition—as opposed to interrogatories or requests for production—is for spontaneity. Suggestive objections and instructions not to answer often thwart this purpose—and may well be designed to do so. Discovery is unduly prolonged and made more expensive when such tactics are employed. The bench, bar, litigants, and the Congress have voiced deep concern about the cost of modern litigation, much of which is incurred during discovery.

In an attempt to help expedite discovery, this court includes the following in the scheduling order for each case:

A discovery motion should not be filed until aggrieved counsel attempts to place a

conference call to the Court (calls may be made during a deposition). Such calls will be given priority. Counsel are directed to first use all good faith and reasonable efforts to resolve discovery disputes before calling the Court.[2]

In one and one-half years of experience with this requirement, the court has received only a handful of calls, and only two cases (including this one) have required motions and briefs.

## THE COURT'S ROLE IN DISCOVERY

("And why beholdest thou the mote that is in thy brother's eye, but perceiveth not the beam that is in thine own eye" St. Luke 6:41, K.J.V.)

A common complaint among members of the trial bar is that courts do not expeditiously rule on pre-trial motions—especially discovery motions—sometimes not until after the discovery deadline date.

Judges are wont to decry the lack of civility and cooperation amongst the members of the trial bar. The judiciary, however, is not without blame. For some reason too many judges have no trouble restraining their enthusiasm for resolving discovery disputes (this puts it mildly). Obviously, if a party wants to obstruct and delay, the inability to get a decision on a discovery dispute assists the obstructor. Members of the bench should keep in mind that the word "judge" is a verb as well as a noun.

Furthermore, some courts apparently operate under the philosophy that, "If I have to hear a discovery dispute, someone is going to have to pay." This attitude strikes the court as being at least a tad shy of judicious. Good, reasonable lawyers will have legitimate discovery disputes, and the court should quickly resolve those disputes so that the litigation can progress with all due speed. No sanctions should attend in these circumstances.

■ On the other hand, when an objection or instruction not to answer is essentially without merit and the court, when it conducts a hearing, simply orders the offending party to produce the requested information (ofttimes scolding *both* parties for not cooperating), the obstructive party loses nothing, but defeats spontaneity and gains attorney's fees. Courts should meet obstructive tactics with stern measures if they expect to deter such conduct.

The court hastens to point out that critics of the justice system often refuse to accept the fact that it is more expensive to litigate a case involving a failed computer system than it was to try one, a generation or so ago, over a broken hoe handle. Society is more complex today. Widgets are more complex today. Litigation is more complex today. Complex litigation is more expensive than simple litigation. Still, almost everyone recognizes that the discovery process is too often over-used or otherwise abused.

## THE STATUTORY PRIVILEGE IN THIS CASE

■ Arkansas Code Ann. 16–114–207(3) (1987) provides, in part, as follows:

> No medical care providers shall be required to give expert opinion testimony against himself or herself ... at a trial. *However this shall not apply to discovery* .... Discovery information can be used at a trial as in other lawsuits ... (emphasis supplied)

This statute apparently affords a medical care provider something in the nature of a self incrimination privilege at the trial itself.

Under Arkansas Code Ann. 16–114–201(2) (1987), a nurse is a medical care provider. While the hospital continues to insist that it relies upon this statute, the court continues to be perplexed by this contention. At first blush, there would appear to be several reasons why this "privilege" is not applicable in these circumstances, but to discuss anything other than the underlined portion of the statute itself would constitute an unreasonable multiplication of words to get to a simple, clear point. This statute provides that it

---

2. The court got the idea for this rule from The Honorable John Coughenour, U.S. District Judge for the Western District of Washington.

"shall not apply to discovery", and this alone eviscerates the hospital's position.

### CONSCRIPTIVE WITNESS RULE

■ The hospital relies upon a concurring opinion in *Arkansas State Highway Comm'n v. Witkowski*, 257 Ark. 659, 519 S.W.2d 743 (1975), which cites 97 C.J.S. 365, *Witnesses* § 16. The black letter law from this section of C.J.S. reads as follows:

b. Professional or Expert Witnesses:

A. A physician, attorney, or other professional witness may be compelled to attend court and testify as to matters within his knowledge, but, although there is authority to the contrary, it is generally held, in the absence of a statute otherwise providing, that he may not be compelled to testify as an expert at the request of a private litigant, although he may be compelled so to testify in matters affecting the common weal or vindication of public justice.

In *Witkowski, supra*, the trial court had permitted the land owners to submit evidence showing that the Highway Commission had used a number of land appraisers, but had not called them as witnesses at the trial. Obviously the land owners wanted to raise the inference that the testimony of those appraisers would have been unfavorable to the Highway Commission.

The Supreme Court of Arkansas held that this was not error, relying upon *Arkansas State Highway Comm'n v. Phillips*, 252 Ark. 206, 478 S.W.2d 27 (1972). In its opinion in *Witkowski, supra*, however, the court served notice on the bench and bar that the rule set forth in *Phillips, supra*, would be reconsidered in later cases.

The concurring opinion, in *Witkowski, supra*, argued that *Phillips, supra*, should not be reconsidered, since, in the concurring justice's opinion, these experts were not equally available to all parties—because of the "conscriptive" witness rule. The concurrence noted that experts could be compelled to testify in criminal cases, but observed that, "(t)his rule has been recognized and applied in Arkansas but not extended to private litigants." *Witkowski*, 257 Ark. at 665, 519

S.W.2d at 747 (Fogleman, J., concurring). In making this statement, the concurring justice relied upon *St. Francis County v. Cummings*, 55 Ark. 419, 18 S.W. 461 (1892) and *Flinn v. Prairie County*, 60 Ark. 204, 29 S.W. 459 (1895).

In both of those cases (*Flinn* and *Cummings* ), a physician sought expert witness fees for testifying in a criminal investigation or trial. In both cases the Arkansas Supreme Court noted that a witness, including an expert, can be compelled to testify in a criminal proceeding. Neither case, however, considered the question of requiring an expert to testify in civil cases.

The hospital cites authorities from other jurisdictions. A typical case is *Karp v. Cooley*, 493 F.2d 408 (5th Cir.1974). In that case plaintiff, executor of her husband's estate, brought an action for wrongful death (malpractice) against famed heart surgeon, Denton A. Cooley. Apparently because of alleged friction between Dr. Michael DeBakey (another famed heart surgeon) and Dr. Cooley, plaintiff subpoenaed Dr. DeBakey to testify. The district court conducted an in-chambers hearing and, the record revealed the following:

... (T)hat Dr. DeBakey had not been employed to give any medical opinion; that he would not accept any employment in the case; that he had never examined Mr. Karp; that he had never seen Mr. Karp; that he would refuse to express any medical opinion concerning the treatment of Mr. Karp; that he would not express any medical opinion based upon hypothetical questions even if asked to do so ... etc.

*Karp v. Cooley*, 349 F.Supp. 827, 836 (S.D.Tex.1972). The district court, in its opinion, went on to state:

.... The various rules on compelling an expert to testify, in the absence of statutory provision, are affected by such factors as the nature of the action or proceeding in which expert is called as a witness, by the nature or subject of the testimony, or by the status, relationship, or situation of the party by or against whom the testimony is sought. Thus, in some cases, the rule of compulsion has been limited to criminal

prosecutions, and has been held not invocable by or on behalf of a private litigant.

*Id.*

The district court weighed the factors set out above and determined that Dr. DeBakey would not be compelled to testify. *Id.* The Fifth Circuit affirmed.

The Supreme Court of Arkansas would probably adopt a rule which gives the trial court discretion to preclude testimony from an expert in circumstances similar to those present in the *Karp* case. Why, under normal circumstances, should a party be allowed to haul a stranger to the litigation into court and force her or him to express opinions based upon hypothetical questions? This practice would hardly comport with "traditional notions of fair play and justice."

Even assuming, however, that the Arkansas Supreme Court had adopted such a rule, it would not afford the hospital any succor in this case. As noted earlier, Ms. Fitzgerald was on duty at the hospital at the time the baby was born; she assisted in resuscitation attempts immediately after the birth; she had "some type of supervisory authority" over the nurses who were present during the difficult delivery; she had reviewed the charts pertaining to delivery; she often worked in this delivery room both before and after the subject delivery; she was a licensed nurse with advanced instruction in fetal heart monitoring.

The questions posed by plaintiffs' counsel were clearly within the deponent's ken of personal knowledge and expertise; she was nowise a stranger to the litigation; and the conscriptive witness rule is clearly inapplicable. When you shuck it down, the hospital relies on inapposite dictum in a concurring opinion.

## SANCTIONS

▮ Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure reads:

RULE 37. FAILURE TO MAKE DISCLOSURE OR COOPERATE IN DISCOVERY; SANCTIONS

(a) Motion for Order Compelling Disclosure or Discovery.

\*   \*   \*   \*   \*   \*

(4) Expenses and Sanctions.

(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

The court finds that the hospital's objections and instructions not to answer were not substantially justified, nor were they harmless. Further, the hospital remained intransigent regarding the Fitzgerald objections even after the court's letter-order of August 31, 1994, and after counsel had had time to research the questions involved. Accordingly, sanctions are manifestly appropriate.

Plaintiffs are awarded their actual, reasonable expenses incurred in connection with the attempted deposition, and the motion to compel (including the hearing). It appears to the court that a $750.00 attorney's fee would be reasonable. If plaintiffs choose to redepose Ms. Fitzgerald, the reasonable expenses, including attorney's fees, of the deposition shall be borne by the hospital. If there is a dispute regarding actual, reasonable expenses, or if either party wishes to contest the reasonableness of the attorney's fee finding, the court should be notified within five working days of the date of the order. If such contact is made, the court will set a briefing schedule.

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
600 W. CAPITOL, ROOM 149
LITTLE ROCK, ARKANSAS 72201
(501) 324–6863
FAX (501) 324–6869

BILL WILSON
JUDGE

August 31, 1994

LETTER–ORDER

Re: ROBERT HARP and SHANNON HARP, individually and on behalf of their minor child, MEGAN ELIZABETH HARP v. JIM C. CITTY, M.D., WHITE COUNTY MEMORIAL HOSPITAL and SEARCY MEDICAL CENTER, P.A. LR–C–93–895

Mr. R.T. Beard, III

Mitchell, Williams, Selig, Gates & Woodyard

320 West Capitol Avenue, Suite 1000

Little Rock, Arkansas 72201

BY FAX—688-8817

Mr. Steven W. Quattlebaum

Williams & Anderson

22nd Floor, 111 Center Street

Little Rock, Arkansas 72201

BY FAX—372-6453

Ms. Laura Hensley Smith

Friday, Eldredge & Clark

2000 First Commercial Building

Little Rock, Arkansas 72201

BY FAX—376-2147

Dear Madam and Sirs:

For the reasons stated during the telephone conference today, the deposition objections raised by counsel for the defendant hospital are overruled. Further, the Court finds that the "instructions not to answer" to the deponent were inappropriate.

ACA 16–114–207(3) provides, in part, that:

No medical care provider shall be required to give expert opinion testimony against himself or herself . . . at a trial. *However, this shall not apply to discovery* (emphasis supplied).

The distinction between "discoverability" and admissibility at trial is elementary.

Instructions not to answer tend to thwart legitimate discovery, and are looked upon with disfavor, absent narrow, specific exceptions (see Federal Rule of Civil Procedure 30[d][1], and the Committee Notes thereunder). No exception applies in these circumstances, and there is not colorable claim of privilege in the discovery setting.

The Court asks that the anticipated Motion to Compel (based upon a similar situation yesterday) be filed this week, and that any response to it be filed on or before next Tuesday, September 6, 1994. Please fax copies directly to the Court. If this schedule cannot be reasonably met, please immediately call my office.

Cordially,

/s/ Wm. R. Wilson, Jr.

Wm. R. Wilson, Jr.

cc: Mr. James McCormack

Dictated by telephone by Judge Wilson from Helena.